## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ENDURANCE AMERICAN
INSURANCE CO.

                                    **CIVIL ACTION**

v.

                                    **NO. 20-174-JWD-RLB**

ABC CAULKING CONTRACTORS, INC.,
ET AL.

### *CONSOLIDATED WITH*

HDI GLOBAL SPECIALTY
SE, f/k/a INTERNATIONAL
INSURANCE COMPANY OF
HANNOVER SE

                                    **CIVIL ACTION**

v.

                                    **NO. 20-494-JWD-RLB**

RD&M, INC.

## RULING AND ORDER

This matter comes before the Court on *RD&M Inc.'s Motion to Dismiss/Stay Indemnity Claims & Motion for More Definite Statement* (Doc. 21) (the "*Motion*").  HDI Global Specialty ("HGS") opposes the *Motion*. (Doc. 69.)  No reply was filed.  Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.  For the following reasons, the *Motion* is granted in part and denied in part.

In sum, HGS's request for a declaratory judgment with respect to its duty to indemnify is unripe and nonjusticiable under Louisiana law. Consequently, HGS's indemnity claim will be dismissed without prejudice. In addition, RD&M's *Motion* requesting a more definite statement

will be denied. Given the dismissal of HGS's indemnity claim, that *Motion* will be denied as moot with respect to the indemnity claim and denied with respect to the duty-to-defend claim.

I.      **Factual and Procedural Background**

   A.  **Introduction**

   This dispute concerns two consolidated matters arising from a construction project. The first suit is *Endurance American Insurance Company v. ABC Caulking Contractors, Inc., et al.*, No. 20-174 (the "*Endurance* suit" or "*Endurance*"). The second is *HDI Global Specialty SE f/k/a International Insurance Company of Hannover SE v. RD&M, Inc.*, No. 20-494 (the "*HGS* suit" or "*HGS v. RD&M*").

   In the latter, Plaintiff is HDI Global Specialty SE f/k/a International Insurance Company of Hannover SE ("HGS"), a liability insurer that issued certain Comprehensive General Liability insurance policies (hereinafter the "HGS policies") to Defendant RD&M, Inc. ("RD&M"). (*HDI Second Amended Complaint for Declaratory Judgment* ("*HGS Second Amended Complaint*" or "*HGS SAC*") ¶¶ 2-5, Doc. 15.) The *HGS* suit is an action for declaratory judgment to determine the parties' respective rights and duties under the HGS polices, (*id.* ¶ 5), and the instant *Motion* arises in that case.

   Turning to the underlying facts, sometime before 2017, University House Baton Rouge, LLC ("University House") hired LMK Baton Rouge Construction, LLC ("LMK") to perform a renovation project on an apartment complex located at 740 West Chimes Street in Baton Rouge, Louisiana (the "Property"). (*HGS SAC* ¶ 9, Doc. 15.)  Acting as the general contractor, LMK entered into agreements with various subcontractors to perform specific work at the Property; one of those subcontractors was RD&M. (*Endurance Compl.* No. 20-174, ¶ 6, Doc. 1.)

   On or around May 19, 2017, in another suit not in this Court, University House filed a

Petition for Damages against LMK alleging breach of contract and seeking damages regarding the allegedly defective construction and renovation of the Property. (*Id.* ¶ 5.) LMK's insurer, Endurance American Insurance Company ("Endurance"), paid University House $4,000,000 to settle the claims against LMK. (*Id.* ¶ 17.)

### B.  The *Endurance* Lawsuit

On March 23, 2020, Endurance filed suit in this Court against the various subcontractors, including RD&M, seeking to recover from them "any and all payments that it made on behalf of LMK." (*Id.* ¶ 18.) Each subcontractor agreement, including the one between LMK and RD&M, contains a provision stating that the subcontractor must defend and indemnify LMK for any claims, liability, loss, damage, or injuries—including reasonable attorney's fees—caused by the subcontractor's "fault or negligence" in performing or failing to perform its work. (*Id.* ¶ 7.) Based on this contractual indemnity agreement, and the fact that Endurance paid the limits of its policy to settle the case against its insured, "Endurance is legally and conventionally subrogated to LMK's right" to recover the money it paid in settlement. (*Id.* ¶ 17.)

During the renovation project, RD&M "performed flashing work to the siding and installed blinds and exterior door trim" at the Property. (*Endurance Compl.* ¶ 12, Doc. 1.) Endurance alleges that RD&M's "deficient work allowed moisture intrusion resulting in damage to the Property," (*id.*), and that, as such, RD&M is liable to it for the respective damage that RD&M's "faulty or defective work" caused (*id.* ¶ 18).

### C.  The *HGS Second Amended Complaint*

As HGS's insured, RD&M "seeks defense and indemnity under the HGS policies" for the claims asserted against it in the *Endurance* lawsuit. (*HGS SAC* ¶ 6, Doc. 15.) Consequently, on October 1, 2020, HGS filed the *Second Amended Complaint* seeking a judgment declaring that it

has no duty to defend, indemnify, or provide coverage to RD&M for the claims asserted against RD&M by Endurance. (*Id.* ¶ 8.)

Specifically, the *HGS Second Amended Complaint* first asserts that RD&M is not entitled to coverage, a legal defense, or indemnity under the HGS policies because of the "Contractors Special Conditions Endorsement," which states the following: "[a]s a condition precedent to coverage for any claim for . . . damage based . . . upon work performed by independent contractors," the insured is required to, *inter alia*, have "received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor." (*Id.* ¶ 14 (quoting "Contractors Special Conditions Endorsement" (Form No. IICHL 40 07 02 12)).) HGS alleges that, because RD&M hired an independent contractor to perform all the work that it had contractually agreed to perform for LMK but failed to obtain a written indemnity agreement from that independent contractor, RD&M failed to satisfy the condition precedent for coverage under the HGS policies. (*Id.* ¶ 15.) Accordingly, HGS argues that it has no duty to defend or indemnify RD&M for any liabilities arising from the work performed by the independent contractor on RD&M's behalf. (*Id.*)

The *HGS Second Amended Complaint* similarly relies on other exclusions for its proposition that HGS has no duty to defend, indemnify, or provide coverage to RD&M with respect to the *Endurance* lawsuit.[1] (*Id.* ¶¶ 16-17.) In addition, HGS requests that it be allowed to withdraw from the defense of RD&M immediately and that "[HGS] be awarded the fees and costs that it has incurred defending [RD&M]." (*HGS SAC* ¶ 20, Doc. 15.)

---

[1] In particular, the *HGS SAC* presents language contained in the "Products or Work Exclusion" endorsement (Form No. IICHL 40 22 02 12) and the "Other Insurance" provision contained in Section IV of the HGS policies; however, the *HGS SAC* provides no further discussion on how these provisions apply to the instant dispute. (*See id.*)

### D.  The Instant Motion and Consolidation

On November 4, 2020, RD&M filed the instant *Motion*. (*Mot.*, *HGS* suit, No. 20-494, Doc. 21.) Thereafter, on November 12, 2020, the suit between HGS and RD&M was transferred to Judge deGravelles and consolidated with the *Endurance* lawsuit upon HGS's unopposed motion. (*Id.*, Doc. 23.) HGS then filed a memorandum in opposition to RD&M's *Motion* on December 2, 2020. (*Opp'n.* No. 20-174, Doc. 69.)  No reply was filed.

## II.    Legal Standard

### A.  Rule 12(b)(1) Standard

The Court construes RD&M's *Motion* as one made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, even though RD&M cited no rule for this request. *See Regions Ins., Inc. v. Ace Property & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 731 (M.D. La. 2015).

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing Fed. R. Civ. P. 12(b)(1)). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.* (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### B.  Rule 12(e) Standard

This Court has previously stated:

> Rule 12(e) provides that "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Beanel v. Freeport–McCoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)"). The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). A Rule 12(e) motion may be appropriate "if a pleading fails to specify the allegations in a manner that provides sufficient notice." *Id.* at 514. When evaluating a motion for a more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8. *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006); *see* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Given the liberal pleading standard set forth in Rule 8(a), Rule 12(e) motions are disfavored. *Adams v. Southland Trace*, 2012 WL 12986191, at *5 (M.D. La. Feb. 29, 2012). The trial judge is given considerable discretion in deciding whether to grant a Rule 12(e) motion. *Id.* Finally, a Rule 12(e) motion is not a substitute for the discovery process. *Ford v. Cain*, 2016 WL 447617, at *2 (M.D. La. Feb. 4, 2016).

*People's Workshop, Inc. v. Fed. Emergency Mgmt. Agency*, No. CV 17-107, 2018 WL 1528191, at *2-3 (M.D. La. Mar. 28, 2018) (deGravelles, J.).

## III.    Discussion

### A.    Summary of Ruling

There are essentially two issues before the Court. The first is whether the indemnity claim is ripe for adjudication and, by extension, whether the Court has jurisdiction to decide that claim. The second is whether the *HGS Second Amended Complaint* is sufficiently specific enough to survive a Rule 12(e) motion. Fed. R. Civ. P. 12(e).

Having carefully considered the law, the allegations in the *HGS Second Amended Complaint*, and the arguments and submission of the parties, the Court will grant RD&M's *Motion* to dismiss the indemnity claim. Under Louisiana law, as interpreted by this Court and others, the question of whether an insurer owes a duty to indemnify is generally unripe until resolution of the underlying lawsuit against the insured. Therefore, the Court will dismiss the indemnity claim without prejudice.

Given the Court's holding, it will deny HGS's *Motion* to find that the *HGS Second Amended Complaint* was not specific enough under Rule 12(e). Specifically, the *Motion* requesting a more definite statement is denied as moot with respect to the duty-to-indemnify claim and denied with respect to the duty-to-defend claim.

### B.    Parties' Arguments

#### 1. RD&M's Original Memorandum (HGS *suit, No. 20-494, Doc. 21-1*)

RD&M first argues that HGS's request for a declaratory judgment regarding its duty to indemnify RD&M should be dismissed because it is premature and thus nonjusticiable. (*Mem.*, *HGS* suit, No. 20-494, Doc. 21-1 at 5.) RD&M cites jurisprudence from the U.S. Court of Appeals

for the Fifth Circuit[2] and the Eastern District of Louisiana to contend that, unlike the duty to defend, claims with respect to the duty to indemnify are not ripe "until the underlying issue of liability is resolved and the Defendant is cast in judgment."[3] (*Id.* at 6.) According to RD&M, the duty-to-defend issue differs from the duty-to-indemnify issue for purposes of ripeness because whether an insurer is obligated to defend its insured can be determined solely by examining the complaint and the insurance policy. (*Id.* at 5.) In contrast, determining whether an insurer is obligated to indemnify first requires factual development to the extent that liability—or non-liability—can be established in the underlying suit. (*Id.* at 7-8.)

For example, RD&M points out that the duty to indemnify can only arise if it has been established that the claims the insured seeks indemnity for are covered by the insurance policy. (*Id.*) RD&M then asserts that whether the endorsements and exclusions HGS relies on actually preclude coverage in this case depends on several questions of fact that have yet to be decided. (*Id.*) Therefore, RD&M contends that because its liability has not yet been determined in the underlying *Endurance* matter—which is now consolidated with this suit—HGS's request for an adjudication of its indemnity obligation to RD&M is nonjusticiable as premature, and thus should be dismissed.[4]

---

[2] From this point on, where the Court mentions the "Fifth Circuit," it is referring to the United States Court of Appeals for the Fifth Circuit. The Court will specifically state "Louisiana Fifth Circuit" when referring to the Louisiana Fifth Circuit Court of Appeal.

[3] *See* Doc. 21-1 at 6 n.24 (citing *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 308 (5th Cir. 2012); *Coregis Ins. Co. v. Sch. Bd. Of Allen Par.*, No. CV 07-30844, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008); *Hof as Tr. of Est. of FoodServiceWarehouse.Com, LLC v. LaPorte*, No. CV 19-10696, 2020 WL 6286207, at *3-4 (E.D. La. Oct. 27, 2020); *Threadgill v. Orleans Par. Sch. Bd.*, No. CV 02-1122, 2013 WL 3777036, at *2 (E.D. La. July 8, 2013) (quoting *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*, No. CV 10-1682, 2012 WL 1198611, at *11 (E.D. La. Apr. 10, 2012)); *Morad v. Aviz*, No. CV 12-2190, 2013 WL 1403298, at *4 (E.D. La. Apr. 5, 2013)).

[4] To support its *Motion*, RD&M also brings attention to the "LMK State Court Lawsuit" recently filed against RD&M in the 19th Judicial District Court (*Mem.*, HGS suit, No. 20-494, Doc. 21-1 at 3; *see also* Doc. 21-3), arguing that the existence of this suit only adds to the seriousness of the risk that any ruling on the indemnity claims by this Court "will impinge on the rulings or factual findings of other Courts" (*id.*, Doc 21-1 at 8). This suit is not discussed in HGS's opposition.

RD&M alternatively argues that, if the Court finds that this suit should not be dismissed, then HGS's request for a declaration regarding its duty to indemnify should be stayed for the same reason it should be dismissed—its nonjusticiability. (*Mem.*, *HGS* suit, Doc. 21-1 at 8.) RD&M cites no authority that supports staying only one claim, however, as it asks the Court to do here.

Next, RD&M urges the Court to require HGS to plead its allegations and "policy defenses" in a more definite manner under Federal Rule of Civil Procedure 12(e). (*Id.*) RD&M argues that the *HGS SAC* "is vague and indefinite to the extent it 'pleads all the terms, conditions, exclusions and limitations of the [HGS] policies in support of the relief sought [therein].' " (*Id.* (quoting *HGS SAC* Doc. 15 at 3).)

Specifically, RD&M asserts that the *HGS SAC*'s language fails to provide RD&M with adequate notice of what is being claimed and thus fails to satisfy the pleading standard expounded in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). (*Id.*) According to RD&M, "[t]he law is well-settled that 'an insurance company may not simply rely on a conclusory allegation that somewhere in its "entire policy" a defense to suit may exist.'" (*Id.* at 2 n.5.) Instead, HGS must point to each specific "defense" contained in its policies when bringing a claim that those policies exclude coverage. (*Id.* at 2, 8.)

### 2. HGS's Opposition (No. 20-174, Doc. 69)

HGS opposes the *Motion* for several reasons. First, HGS argues that the Court should not dismiss or stay its request for declaratory judgment on its duty to indemnify because the claim is ripe and justiciable. (*Opp'n.* No. 20-174, Doc. 69 at 2, 5.) The crux of HGS's ripeness argument is that the doctrine of hardship is "one of the key considerations" for determining ripeness, and HGS claims it would suffer grave hardship should judgment be withheld. (*Id.* (citing *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 735 (M.D. La. 2015) (Jackson, J.)).)

Specifically, if this action is dismissed or stayed, HGS points out that defense costs will continue to mount during the pendency of the underlying liability issue, forcing HGS to wait and "roll the dice on the outcome" while its risk of future hardship worsens. (*Id.* at 5 (quoting *Regions*, 80 F. Supp. 3d at 736).)

Moreover, HGS emphasizes the fact that the declaratory judgment suit was consolidated with the underlying *Endurance* suit *after* RD&M filed its *Motion*. (*Id.*) HGS maintains that, after this Court considers the recent consolidation, judicial economy and efficiency, and the danger of substantial hardship, the necessary conclusion will be that it should maintain and decide HGS's action. (*Id.*)

Additionally, HGS contends that its action should be neither dismissed nor stayed because, when the duty to defend and the duty to indemnify are presented together (as here), and when the "same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," both issues are ripe and justiciable *before* a determination of liability. (*Id.* at 5-6.) However, HGS simply concludes that the "same reasons" negating both duties exist here without articulating how that conclusion was reached or what those reasons are. (*Opp'n.* No. 20-174, Doc. 69 at 6.) And while HGS does cite to *Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.,* 542 F.3d 106, 111 (5th Cir. 2008) and *Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640, 649 (M.D. La. 2018) (Jackson, J.) as supporting this conclusion, no explanation as to why those cases apply here is provided. (*Id.* at 6 n.13, n.14.)

HGS further alleges that the group of cases presented in RD&M's *Motion* are distinguishable from the instant dispute because none of those cases declared the action premature when (1) the duty to defend and the duty to indemnify were presented together, and (2) the reasons which negate both duties were before the court. (*Id.* at 6.) To illustrate this point, HGS points to

*Coregis Ins. Co. v. Sch. Bd. Of Allen Par.*, No. 07-30844, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008), a case cited by RD&M, and asserts that this case is inapplicable to the issue at hand since the court only dealt with the duty to indemnify. (*Id.*)

Next, HGS addresses RD&M's alternative request to stay the declaratory judgment action, arguing that for the same reasons this action should not be dismissed (stated above), this action should also not be stayed. (*Id.*) In addition, HGS contends that RD&M "fails to cite any authority for the relief requested" and similarly fails to provide any specific argument for why the Court should order a stay of the action. (*Id.*) As such, HGS argues that RD&M has "waived" its request for a stay and thus that request should be denied. (*Opp'n.* No. 20-174, Doc. 69 at 6 n.15 (citing *Brumfield v. Zapata Gulf Marine Corp.*, No. CV 90-1319, 1992 WL 16345, at *1 (E.D. La. Jan. 21, 1992); *Hudson v. Forest Oil Corp.*, No. CV 02-2225, 2003 WL 21276385, at *4, *7 (E.D. La. June 2, 2003), *aff'd*, 372 F.3d 742 (5th Cir. 2004)).)

Finally, HGS submits that RD&M's request for a more definite statement under Federal Rule of Civil Procedure 12(e) should likewise be denied because the *HGS SAC* is specific and definite with respect to the portions of the HGS policies that support its requested relief. (*Id.* at 7.) According to HGS, when evaluating a Rule 12(e) motion, the court must assess the complaint in light of the minimum pleading standard set forth in Federal Rule of Civil Procedure 8(a). (*Id.*) Then, if the complaint is "so vague and ambiguous" that the responding party "cannot reasonably prepare a response," the court may grant the motion. (*Id.*; Fed. R. Civ. P. 12(e).) HGS also directs the Court to *Reedom v. Jones*, No. CV 10-378, 2010 WL 4875636, at *1 (E.D. La. Nov. 22, 2010), which states that "[g]iven the liberal pleading standard set forth in Rule 8, Rule 12(e) motions are disfavored." (*Opp'n.* No. 20-174, Doc. 69 at 7 n.16.)

HGS maintains that the *HGS SAC* more than satisfies Rule 8(a)(2) because it provides a

clear and concise statement of the claim—it specifically alleges that there is no coverage and no duty to defend or indemnify—and the grounds upon which that claim rests. (*Id.* at 7.) Specifically, HGS claims that the *HGS SAC* provides a detailed factual background, points to specific policy language, and references specific exclusions, endorsements, and conditions precedent. (*Id.*) HGS notes, for instance, that the *HGS SAC* specifically states that RD&M failed to satisfy a condition precedent for coverage (i.e., the requirement that RD&M procure a written indemnity agreement with the independent contractor). (*Id.* at 8.) According to HGS, the operative complaint clearly provides RD&M with notice as to why it is not entitled to coverage under the HGS policies. (*Id.*) Moreover, HGS distinguishes the cases cited in RD&M's *Motion* on this point, arguing that they all focus on a defendant's waiving of affirmative defenses after failing to raise them in the answer. (*Id.*)

In closing, HGS again asks the Court to deny RD&M's *Motion* in its entirety by ruling that the declaratory judgment action is ripe for adjudication and that the *HGS SAC* is definite enough for RD&M to prepare a response.

### C. Applicable Law

#### *1. Liability Insurer's Duties Generally*

In general, a liability insurer owes two duties to its insured: the duty to defend and the duty to indemnify. Although related, an insurer's duty to defend is separate and distinct from its duty to indemnify. *Cambridge Integrated Servs. Grp., Inc. v. Concentra Integrated Servs., Inc.*, 697 F.3d 248, 254 (5th Cir. 2012) (applying Louisiana law); *Morad v. Aviz*, No. CV 12-2190, 2013 WL 1403298, at *3 (E.D. La. Apr. 5, 2013); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

Under Louisiana law, whether the insurer owes a duty to defend is determined by

application of the "eight corners rule," which directs the court to examine the four corners of the complaint and the four corners of the insurance policy without resort to extrinsic evidence. *Arch Ins. Co. v. Outreach Cmty. Dev. Corp.*, No. CV 15-721, 2017 WL 8944048, at *5 (M.D. La. Dec. 21, 2017) (deGravelles, J.) (citing *Mossy Motors, Inc. v. Cameras Am.*, 04-0726 (La. App. 4 Cir. 3/2/05), 898 So. 2d 602, 606); *Martco*, 588 F.3d at 872; *Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640, 649 (M.D. La. 2018) (Jackson, J.). If the facts alleged in the complaint could "possibly fall within matters covered under the policy," then the duty to defend is triggered. *Arch Ins.*, 2017 WL 8944048, at *5 (citing *Martco*, 588 F.3d at 872). Although many of the claims alleged may be clearly precluded under an applicable policy exclusion, if the complaint discloses "a single allegation" for which coverage is "not unambiguously excluded," a duty to defend nevertheless exists. *Id.* (citing *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, No. CV 14-1930, 2017 WL 2973079, at *9 (E.D. La. July 12, 2017)). Because the duty-to-defend issue must be decided solely by examination of the complaint and the insurance policy, that inquiry is ripe for adjudication before resolution of the insured's underlying suit. *Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.,* 542 F.3d 106, 110 (5th Cir. 2008) (applying Texas law).

In contrast, the duty to indemnify cannot be determined until the insured's liability has been resolved, because the duty to indemnify "is triggered by the actual facts that establish liability in the underlying suit." *Id.* (citing *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000) (internal citations omitted)); *see also Martco*, 588 F.3d at 872 (applying Louisiana law, the Fifth Circuit noted that "[w]hile factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are indispensable in assessing the duty to indemnify"). "Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and nonjusticiable." *Hof as Tr.*

*of Est. of FoodServiceWarehouse.Com, LLC v. LaPorte*, No. CV 19-10696, 2020 WL 6286207, at

*3 (E.D. La. Oct. 27, 2020) (quoting *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 308 (5th

Cir. 2012) (citing *Mossy Motors, Inc.*, 898 So. 2d at 607)). As this Court has stated:

> The duty to indemnify generally does not arise "until the indemnitee actually makes
> payment or sustains loss." *Quinlan v. Liberty Bank & Tr. Co.*, No. 89-C-1644, 575
> So. 2d 336, 340 (La. 1990); *see also First Nat. Bank of Louisville v. Lustig*, 975
> F.2d 1165, 1167 (5th Cir. 1992). However, the "duty to indemnify is justiciable
> before the insured's liability is determined in the liability lawsuit when the insurer
> has no duty to defend and the same reasons that negate the defense likewise negate
> any possibility the insurer will ever have a duty to indemnify.*" See Columbia Cas.
> Co. v. Georgia & Florida RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008) (applying
> Texas law); *see also Morad v. Aviz*, 2013 WL 1403298, at *3 (E.D. La. Apr. 5,
> 2013) (citing *Columbia Cas. Co.* for this principle in case applying Louisiana and
> Mississippi law).

*Arch Ins.*, 2017 WL 8944048, at *5.

## 2. Exception to the General Rule for the Duty to Indemnify

Pursuant to this exception, courts can adjudicate duty-to-indemnify claims before entry of

judgment in the underlying suit if two requirements are satisfied. First, the court must determine

through application of the eight corners rule that the insurer does not owe a duty to defend. Second,

the court must determine that the same reasons the insurer owes no duty to defend also show that

there is no chance any of the underlying claims could be covered under the policy down the road.

In *Arch Insurance*, this Court emphasized the latter point, explaining that this exceedingly

"narrow exception" is invoked when "there is *no 'possibility'* that the insurer will ever have a duty

to indemnify." 2017 WL 8944048, at *7 (emphasis added) (citing *Quinlan*, 575 So. 2d at 340;

*First Nat. Bank of Louisville*, 975 F.2d at 1167; *Columbia Cas. Co.*, 542 F.3d at 111). In other

words, the exception relied on by HGS is not necessarily invoked simply because the insurance

policy appears to exclude coverage for the claims based on the allegations made in the complaint.

If there is a slight possibility that any one of the claims will "broaden or change" such that it might

14

be covered under the policy, then the exception is not satisfied; the indemnity obligation is premature until the insured's liability is determined. *Id.*

### D. Analysis

At the outset, it is important to note two things. First, "district courts have discretion to decline to grant relief as to the duty to indemnify under the authorization of the Declaratory Judgment Act." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 536-37 (5th Cir. 2004). Second, because the Fifth Circuit has stated that Texas and Louisiana apply essentially the same rules with respect to an insurer's disputed duties to defend and indemnify, Fifth Circuit jurisprudence involving Texas law will apply here—to the extent it is applicable—with equal force. *See Coregis*, 2008 WL 2325632, at \*2 n.5.

#### 1. The Duty to Indemnify and Ripeness Generally

In its *Motion*, RD&M asserts that through a "distinct subset of ripeness jurisprudence" involving insurance coverage disputes, the Fifth Circuit has already answered the justiciability question before this Court today. (*Mem.*, *HGS* suit, Doc. 21-1 at 4, 5.) As such, RD&M maintains that HGS's request for a declaration on its duty to indemnify is premature and nonjusticiable. (*Id.*) For the following reasons, the Court agrees.

In *Northfield*, at the time the district court was tasked with determining the insurer's defense and indemnity obligations, the underlying litigation was still pending. 363 F.3d at 537 (applying Texas law). The Fifth Circuit affirmed the district court's decision, holding that the insurer had a duty to defend the insured in the underlying suit, but that, because the underlying litigation had not yet been completed, the duty-to-indemnify question was unripe and nonjusticiable. *Id.*

Since *Northfield*, the Fifth Circuit has consistently reaffirmed the validity of that general

rule. *See Martco*, 588 F.3d at 872 (stating that factual development regarding liability is necessary before the duty to indemnify can be decided and holding that the insurer had a duty to defend and indemnify, but the duty-to-indemnify claim was only ripe because the underlying litigation had already been completed) (applying Louisiana law); *see also Columbia Cas. Co.*, 542 F.3d at 111 (stating that generally, the duty to indemnify question is not ripe until after resolution of the underlying suit and finding that the indemnity question was ripe, but solely because the insurance policy did not impose a duty to defend, causing a narrow exception to apply); *see also Coregis*, 2008 WL 2325632, at *2 (stating that under both Texas and Louisiana law, "the indemnity issue is nonjusticiable pending resolution of the liability suit").

Like the insurance company in *Northfield*, HGS asks this Court to declare that it has no duty to defend or indemnify its insured in an underlying matter that has not yet been resolved. Based on the Fifth Circuit's holding in *Northfield*, this Court must decline to decide HGS's indemnity obligation to RD&M, and accordingly rule that the indemnity claim is not ripe for adjudication.

Other courts—as well as this one—have reached similar conclusions when charged with determining an insurer's duty to defend and duty to indemnify together. *See Arch Ins.*, 2017 WL 8944048, at *7-8; *Morad*, 2013 WL 1403298, at *4 (granting insurer's motion to dismiss and finding that the issue with respect to the insurer's duty to indemnify was "not justiciable before the resolution of the underlying suit"); *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*, No. CV 10-1682, 2012 WL 1198611, at *1, *11 (E.D. La. Apr. 10, 2012) (concluding that the insurer owed a duty to defend but that the duty to indemnify issue was premature because the arbitration had not yet determined liability).

Of particular significance is this Court's ruling and rationale in *Arch Insurance*, a case in

which the insurer argued it was entitled to summary judgment based on the policy showing that there was no coverage—and thus no obligation to defend or indemnify the insured—for the claims and damages sought in the underlying action. 2017 WL 8944048, at *4. Although the Court there granted the insurer's motion for summary judgment in part, finding that there was no duty to defend, it denied the insurer's motion with respect to the duty to indemnify. *Id.* at *8. Applying the well-established principle that the duty to indemnify is generally unripe "prior to the entry of judgment in [the] underlying action," the Court found that the insurer's indemnity obligation to its insured was nonjusticiable at that time because the underlying lawsuit whereby the insured's liability was to be determined remained unresolved. *Id.* at *2, *8. In reaching this result, the Court additionally noted that it "discern[ed] little risk in leaving the duty to indemnify to be decided at another time in view of the facts as they actually exist." *Id.* at *7.

*Arch Insurance* and the present case are similar in several respects. First, like in *Arch Insurance*, the underlying matter of liability in this case remains pending at the time this Court must make a determination on coverage, the duty to defend, and the duty to indemnify. *Id.* at *2. Second, both cases involve a general liability insurance policy and some property damage arising out of allegedly defective work. *Id.* Additionally, in both actions, the insurer's primary argument is that no coverage, legal defense, or indemnity is owed to its insured because of the applicability of certain exclusions in the policy. *Arch Ins.*, 2017 WL 8944048, at *2. In *Arch Insurance*, the fact that the policy exclusions precluded coverage and showed there was no duty to defend certain claims did not persuade this Court to stray from the general rule that the duty to indemnify is unripe before liability has been determined. The exclusions and endorsements that HGS alleges foreclose coverage in this case do not either.

17

### 2. Exception to the General Rule

Relying on *Columbia Cas. Co.*, 542 F.3d 106 and *Moore*, 352 F. Supp. 3d 640, HGS contends that the indemnity claim in this case is ripe before a determination of liability because (1) no duty to defend exists here, and (2) the same reasons that negate the duty to defend likewise negate the duty to indemnify. (*Opp'n.* No. 20-174, Doc. 69 at 2.) Without explicitly saying as much, HGS essentially argues that its indemnity claim is not premature because it meets the exception to the general ripeness rule discussed above. (*Id.*)

Again, *Arch Insurance* is relevant to the analysis. There, this Court found that the claims asserted against the insured in the underlying suit were clearly not covered under the policy due to the policy's Asbestos Exclusion; hence, the "eight corners" of the insurance policy and petition foreclosed coverage and showed there was no duty to defend. *Arch Ins.*, 2017 WL 8944048, at *7. Moving to the indemnity issue, the Court analyzed whether the exception could apply and allow the Court to adjudicate the indemnity claim before resolution of the underlying action. *Id.*

This Court acknowledged that (1) the insurer owed no duty to defend, and (2) any claim the plaintiff would state against the insured in the underlying lawsuit was "very likely" to "be covered by the Asbestos Exclusion or one of the other exclusions." *Id.* In other words, the same reasons that prevented the insurer from owing a duty to defend—the exclusions—were also "very likely" to negate any duty to indemnify. *Id.*

Nevertheless, this Court found that there was still a slight possibility that the insurer could have a duty to indemnify down the road. *Id.* It was possible that "the underlying action [could] broaden or change to encompass some claim that might be covered under the Policy," and that slight possibility ended the analysis; the Court concluded that the exception was not met. *Id.*

Likewise, *Mark v. Sunshine Plaza, Inc.*, No. CV 16-455, 2016 WL 6876645 (E.D. La. Nov.

22, 2016) illustrates just how limited this exception is. There, the plaintiff brought suit under the Americans with Disabilities Act ("ADA"), alleging that the shopping center owned by defendant was not accessible due to a number of features "that [were] non-compliant with ADA Regulations;" thus, plaintiff's claim was essentially that the non-accessibility of the property violated her rights as a qualified individual with a disability. *Id.* at *3. The insurance policy only required the defendant's insurer to pay for damages that occurred as a result of "bodily injury," "property damage," or "personal and advertising injury" as defined in the policy. *Id.* at *4.  The defendant's insurer argued that the claims fell outside coverage of the relevant insurance policy and, accordingly, it had no duty to defend or indemnify the defendant for non-covered claims. *Id.* at *1. The Eastern District agreed with the insurer and concluded that the indemnity issue could be adjudicated at that time because the ripeness exception was satisfied. *Id.* at *6.

The critical difference between *Mark v. Sunshine Plaza* and *Arch Insurance* is that in the former case, there was no possibility that an action for non-compliance with the ADA's property-accessibility requirements could morph or broaden to encompass a claim resulting from "bodily injury," "property damage," or "personal and advertising injury." *Id.* at *5. Even when liberally interpreting those terms in favor of the insured, the court found that the claims alleged in the injured party's complaint had no chance of changing to the extent that they could be covered under the policy. *Mark v. Sunshine Plaza, Inc.*, 2016 WL 6876645, at *5. In contrast, the *Arch Insurance* Court found that there was a possibility, however slight, that the underlying action could "broaden or change" to encompass at least one claim that the commercial general liability policy might cover. 2017 WL 8944048, at *7.

Because HGS fails to further explain how or why the exception applies in this case, the Court can only assume it is because HGS believes two things: (1) that it owes no duty to defend

19

RD&M in the underlying matter because the various exclusions in the HGS policies unambiguously preclude coverage for the claims; and (2) the same reasons (the exclusions) that negate HGS's duty to defend also negate HGS's duty to indemnify, because if the insurance policy provides no coverage for the claims, an insurer has no indemnity obligation with respect to those claims.

But, when faced with the same scenario in *Arch Insurance*, this Court rejected that argument and concluded that the exception did not apply. *Id.* Thus, the instant issue is more factually analogous to *Arch Insurance* than it is to *Mark v. Sunshine Plaza*, primarily because the claims brought against RD&M—like those brought against the insurer in *Arch Insurance*–arise out of allegedly defective construction and, like in *Arch Insurance*, there is still a possibility the claims asserted by Endurance could be covered under the HGS policies. Therefore, the Court concludes that HGS's duty-to-indemnify claim fails to satisfy this narrow exception.

In addition, HGS's reliance on *Columbia Cas. Co.* and *Moore* for its assertion that the above-mentioned exception applies here is unpersuasive as both of those cases are factually distinguishable. In *Columbia Cas. Co.*, the indemnity issue did not satisfy the exception addressed herein. Instead, the Fifth Circuit found that the indemnity claim there was ripe because another exception was met—one born out of a Texas appellate court's decision. *See Columbia Cas. Co.*, 542 F.3d at 111 (relying on *Roman Cath. Diocese of Dallas, ex rel. Grahmann v. Interstate Fire & Cas. Co.*, 133 S.W.3d 887, 890 (Tex. App. 2004) (because the insurance policy did not provide for a duty to defend the insured *in any situation*, and it seemed clear that the policy could not cover the claim the insured sought indemnity for, the court found it appropriate to decide indemnity before the underlying suit was resolved)). The insurance policy involved in *Columbia Cas. Co.* did not contain a "duty to defend" provision as that duty is understood at all; instead, the "defense"

provision resembled something more like a "right to associate" or be involved at the insurer's sole option, so the duty to defend issue was not even before the court. *Id.* at 108.

*Moore* likewise does not control the issue before this Court.[5] There, Home Depot sought defense and indemnity from an insurer based on a "maintenance services agreement" between Home Depot and the insured, Design Air. *Moore v. Home Depot USA, Inc.*, No. CV 16-810, 2017 WL 5180431, at *6 (M.D. La. Nov. 8, 2017). The insurer filed a crossclaim against Home Depot seeking a declaratory judgment that it had no duty to defend or indemnify Home Depot. *Id.* at *2. In response, Home Depot moved to dismiss the insurer's claim, arguing that the request was unripe because the duty to indemnify generally "cannot be determined until fault is allocated." *Id.* at *5.

Home Depot was not a named or additional insured under the policies issued to Design Air, the insurer had not issued any policies to Home Depot, and the agreement between Home Depot and the insured did not obligate the insurer to indemnify or defend Home Depot. *Id.* at *6. For these reasons, the Court found that the exception was met. *Id.* at *5. The insurer "need not indemnify Home Depot for the same reasons it need not defend Home Depot"; thus, both the indemnity and defense claims were justiciable. *Id.* The instant case differs from *Moore* because, among other things, the party seeking indemnity and defense in this case (RD&M) is an insured under the HGS policies and, unlike the insurer in *Moore*, HGS has not alleged sufficient facts to establish that there is no possibility HGS will ever be obligated to indemnify RD&M.

---

[5] Though HGS cites to *Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640 (M.D. La. 2018) to support its proposition that the exception discussed above applies here, nowhere in *that* opinion did the Court either mention the ripeness exception HGS refers to or engage in any analysis of the insurer's duty to indemnify. (*See* Opp'n. No. 20-174, Doc. 69 at 2 n.3.) In a previous opinion from that case, however, Judge Jackson found that the ripeness exception discussed above was satisfied. *See Moore v. Home Depot USA, Inc.*, No. CV 16-810, 2017 WL 5180431 (M.D. La. Nov. 8, 2017). That decision, not the one cited by HGS, will be addressed herein.

### 3. The Ripeness Principles Set Out in Arch Insurance, Not Regions, Control Here Because Regions is Factually Distinguishable

Finally, although HGS's principal ripeness argument—that its indemnity claim is ripe under the doctrine of hardship—appears colorable, it simply cannot be reconciled with the ripeness jurisprudence directly on point from the Fifth Circuit, Eastern District, and this Court. Notably, HGS contends that the indemnity issue is ripe for adjudication now because, if judgment is withheld, HGS would endure substantial hardship as defense costs continue to increase. (*Opp'n.* No. 20-174, Doc. 69 at 2, 5.) The chief case HGS relies on to support this argument is *Regions*, and, as explained below, *Regions* is factually distinguishable in several respects and thus inapplicable to the issue at hand. 80 F. Supp. 3d 730.

In *Regions*, the plaintiff brought a declaratory judgment action seeking a declaration that it had no duty to indemnify the two defendants, Ace and Loggers, with respect to two state court lawsuits the defendants had already settled. *Id.* at 731. Ace moved to dismiss the action as premature, rooting its argument in the fact that Ace and Loggers were engaged in a binding arbitration proceeding, the purpose of which was to produce "a legal determination of damages suffered by Ace and Loggers and the *relative liability* between *those* parties."[6] *Id.* at 735 (emphasis added). Specifically, Ace argued that the plaintiff's declaratory judgment action would not ripen until resolution of the pending arbitration because the outcome of that proceeding would affect which of the two parties, if either, would have a viable indemnity claim against the plaintiff. *Id.* at 732, 734.

The *Regions* Court ultimately held that the action was ripe and justiciable. *Id.* at 736. Judge Jackson reached this conclusion by employing a two-part ripeness test, which requires the court to

---

[6] The arbitration between the defendants stemmed from a dispute between them regarding their "respective duties" in the already-settled state court lawsuits. *Id.* at 732. The *Regions* plaintiff was not a party to the arbitration proceeding. *Id.*

consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 733 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). The Court also importantly noted that "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Regions*, 80 F. Supp. 3d at 733.

In its determination that the action involved an actual controversy such that it was fit for judicial review, the Court reasoned that a declaratory judgment action is not premature simply because a contingency—here being the outcome of the arbitration—"*could* eliminate the possibility of" the adverse party "having a viable claim." *Id.* at 734 (emphasis added). Moreover, the Court pointed out that no further factual development was necessary for the arbitration panel to make its legal determination—all facts relevant to the plaintiff's alleged "liability" or indemnity obligation to Ace and Loggers had already been fully developed. *Id.* at 735.

As to the other key consideration for determining ripeness, the Court found that the plaintiff would suffer a substantial hardship should judgment on the indemnity obligation be withheld. *Id.* at 736. In reaching this conclusion, the Court emphasized two things, the first being that waiting until the termination of the arbitration to seek a declaration of rights would force the plaintiff to sit tight while defense costs and interest born by both defendants "continue to pile up." *Id.* at 735. In addition, the Court noted that the possibility of "duplicative litigation" resulting from the "substantial likelihood" that the defendants would attempt to subpoena the plaintiff in their pending arbitration only further persuaded the Court that its review at that time was needed to prevent substantial hardship. *Id.*

As mentioned above, the ripeness principles espoused in *Regions*, especially the doctrine of hardship, is not controlling here because *Regions* and the present case differ in significant ways.

First, the *Regions* plaintiff sought a declaration that it had no duty to indemnify the two defendants for amounts they had already expended to defend and settle the underlying lawsuits. *Regions*, 80 F. Supp. 3d at 731. In other words, the underlying suits where liability is determined had already been resolved by the time Judge Jackson was asked to determine the plaintiff's indemnity obligations, whereas the *Endurance* matter in the instant case where RD&M's liability is to be determined remains pending.

Secondly, and related to the previous point, the cases differ because no further factual development was needed concerning the occurrences that allegedly created the *Regions* plaintiff's obligation to indemnify the defendants. *Id.* at 735. In contrast, the *Endurance* matter, recently consolidated with this present action, will require development of facts establishing RD&M's liability—or non-liability—before the question of whether HGS must indemnify RD&M is ready to be considered. As RD&M's *Motion* points out, for example, the duty to indemnify only applies to claims that are actually covered under the policy, and several factual determinations necessary to determine whether  Endurance's claims are covered or excluded under the HGS policies remain unresolved. (*Mem.*, *HGS* suit, Doc. 21-1 at 7-8.)

### 4. The Court Will Dismiss HGS's Indemnity Claim Without Prejudice

Given the Court's finding that HGS's indemnity claim is unripe and nonjusticiable, the question remaining is which route to take procedurally. In this respect, the Court has three options: (1) grant RD&M's *Motion* in part and dismiss the indemnity claim without prejudice; (2) decline to rule on HGS's duty to indemnify until RD&M's liability in the underlying matter is resolved; or (3) grant RD&M's alternative *Motion* and stay the declaratory judgment action where the indemnity claim is concerned. Each option will be discussed in turn.

In *U.S. Fire Ins. Co. v. A-Port, LLC*, No. CV 14-441, 2015 WL 1416490 (E.D. La. Mar.

26, 2015), the Eastern District faced the same decision. There, an insurer sought a declaratory judgment that it owed no duty to defend or indemnify its insured against a state court action. *Id*. at *1. The insured filed a motion to dismiss the action for lack of subject matter jurisdiction or, alternatively, to stay the action pending resolution of the underlying suit.[7] *Id.* The court found that the indemnity claim was unripe, and, resultantly, granted the motion in part and dismissed that claim without prejudice. *Id.* The court concluded that the duty-to-defend claim, however, was ripe for decision and there was "no reason the [c]ourt should decline to hear it." *Id.* at *5. Accordingly, the court denied the insured's motion to dismiss or alternatively stay in this respect and decided the duty-to-defend claim would remain pending. *Id.* at *1, *5.

On the other hand, in similar situations, the Eastern District has taken the second route mentioned above by simply declining to rule on the issue until the underlying matters were resolved. *See Westport Ins. Corp. v. Preis & Roy, P.L.C.*, No. CV 11-2741, 2012 WL 1745519, at *2 (E.D. La. May 16, 2012) ("But all this means is that the [c]ourt would decline to entertain dispositive motions on these issues"). For instance, in *Westport*, the insured filed a counterclaim seeking declaratory relief on a number of issues, one being whether the insurer was obligated to defend and indemnify its insured in the underlying legal malpractice suit brought in state court. *Id.* at *1. The insurer moved to dismiss the counterclaim, arguing that it was not ripe for adjudication because there had been no liability finding against the insured in state court. *Id.* at *2. Alternatively, the insurer moved to stay the counterclaim pending the outcome of the underlying suit. *Id.*

The court stated that it saw no reason to stay, much less dismiss, the insured's counterclaim. *Id.* The court decided holding off on a decision instead of formally staying the counterclaim was

---

[7] The insured also moved "in the further alternative" to compel joinder of a party. *U.S. Fire Ins. Co. v. A-Port, LLC*, No. CV 14-441, 2015 WL 1416490, at *1 (E.D. La. Mar. 26, 2015). That alternative motion need not be addressed here.

proper because it found that "certain . . . claims [were] not ripe for adjudication," discovery would proceed "far more efficiently as to all claims at one time[,]" and "[s]taying certain claims in a piecemeal fashion would only serve to delay the litigation longer, particularly the claims pending before this [c]ourt." *Id.* Dealing with about seven different issues within the counterclaim, the court did not explicitly state that the indemnity claim was unripe in its reasoning. The court did emphasize, however, that "[u]nder the Declaratory Judgment Act, district courts have discretion to refuse to rule on the duty to indemnify pending completion of the underlying litigation." *Westport Ins. Corp.*, 2012 WL 1745519, at *2 (citing *Northfield*, 363 F.3d at 536-37); *see also Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, No. 11-2375, 2016 WL 7156067 (E.D. La. Dec. 8, 2016) (finding that the insurer's request for a declaration on its indemnity claim was premature, the court denied the motion to stay and declined to rule on the insurer's duty to indemnify until liability in the underlying suit was resolved).

The case before the Court today is more similar to *U.S. Fire* than it is to *Westport*, and thus, pursuant to its broad discretion, the Court chooses to follow the result in the former case. Moreover, the Court is convinced that judicial efficiency and economy will be better served by dismissing HGS's indemnity claim without prejudice, as opposed to postponing a decision on HGS's duty to indemnify until RD&M's liability is determined.

Finally, as to RD&M's alternative *Motion* to stay the indemnity claim, although courts do have the authority to stay one action pending the resolution of the other action in a consolidated matter, RD&M has pointed to no authority for staying a single claim that is part of an action encompassing several claims. And RD&M makes clear that it is alternatively moving the Court to stay HGS's request regarding its indemnity claim only. (*See Mot.* Doc 21 at 2; *see also Mem.* Doc. 21-1 at 1, 8.) Accordingly, RD&M's request in this respect is unworkable and will be denied.

Assuming for a moment that RD&M moves for a stay of HGS's entire declaratory judgment action, however, the Court is still inclined to deny that request and instead dismiss the indemnity claim only. "The United States Court of Appeals for the Fifth Circuit has held that it is 'well-settled' that a district court has broad 'discretion over whether to decide or dismiss a declaratory judgment action.' " *Massachusetts Bay Ins. Co. v. Lewis*, No. 10-585, 2011 WL 1261145, at *2 (M.D. La. Mar. 31, 2011) (Jackson, J.) (quoting *Travelers Ins. Co. v. La Farm Bureau Fed'n.*, 966 F.2d 774, 778 (5th Cir.1993)).

The issue of whether RD&M is entitled to a legal defense from HGS is one that can, and should, be determined sooner rather than later. The Court has the HGS policies and the *Endurance Complaint* (*Compl.* No. 20-174, Doc. 1) (that is, the "eight corners"), replete with facts and claims concerning RD&M's alleged liability. Pursuant to its broad discretion, the Court declines to stay the entire action, and will instead only dismiss the indemnity claim due to its nonjusticiability.

To sum up, HGS's request for a declaratory judgment with respect to its duty to indemnify is unripe and nonjusticiable under Louisiana law. Accordingly, RD&M's *Motion* will be granted in part and HGS's indemnity claim will be dismissed without prejudice.

### 5. The HGS Second Amended Complaint *is Specific and Definite Enough to Survive a Rule 12(e) Motion*

As mentioned above, RD&M additionally moves this Court to require HGS to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Because the Court has ruled that the indemnity claim will be dismissed as premature, there is no need to decide RD&M's request for a more definite statement with respect to the indemnity claim, as that issue is moot. With respect to HGS's duty-to-defend claim, however, the Court finds that the *HGS SAC* is more than sufficient to survive a Rule 12(e) motion.

"Rule 12(e) provides that 'a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.' Fed. R. Civ. P. 12(e)." *People's Workshop*, 2018 WL 1528191, at *2. Put another way, a Rule 12(e) motion may be proper if the complaint is "so vague or ambiguous" that it "fails to specify the allegations in a manner that provides sufficient notice" to the responding party. *Id.* (quoting *Swierkiewicz*, 534 U.S. at 514). As this Court has previously stated, "When evaluating a motion for a more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8." *Id.* at *3 (citing *Babcock & Wilcox Co.*, 235 F.R.D. at 633; Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing the pleader is entitled to relief")).

In the *HGS SAC,* HGS points to specific exclusions and endorsements in the HGS policies to support its claim that it owes no duty to defend RD&M against Endurance. For example, HGS directly quotes language from the Contractors Special Conditions Endorsement, which provides that "[a]s a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, the insured must have, prior to the start of work and the date of the occurrence giving rise to the claim or suit: 1) received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from work of the independent contractor." (*HGS SAC* ¶ 14, Doc. 15 (quoting "Contractors Special Conditions Endorsement" (Form No. IICHL 40 07 02 12)) (internal citations omitted).) In addition to the requirement that the insured obtain a written indemnity agreement, the endorsement lists three additional requirements as conditions precedent to coverage under the policies. (*See id.*)

The *HGS SAC* then states that, "[u]pon information and belief," RD&M hired an independent contractor to perform all of the work RD&M originally agreed to perform for the general contractor and Endurance's insured, LMK. (*Id.* ¶ 14.) "However, since there was no written agreement between RD&M, Inc. and the independent contractor it hired to perform the work, and specifically, because RD&M, Inc. failed to procure a written indemnity agreement from the independent contractor holding RD&M, Inc. harmless for all liabilities . . . as required under the HGS policies as a condition precedent to coverage . . . coverage is excluded" by this endorsement for the claims asserted by Endurance. (*Id.* ¶ 15.) The *HGS SAC* additionally cites language from the "Products or Work Exclusion Endorsement" (*id.* ¶ 16) and the "Other Valid & Collectible Insurance Available" provision (*id.* ¶ 17) as precluding coverage here. The *HGS SAC* goes on to assert that, "[b]ased on the foregoing, HGS seeks a judicial declaration that . . . HGS has no obligation to provide RD&M, Inc. with a legal defense in connection with the Endurance lawsuit." (*HGS SAC* ¶ 19, Doc. 15.)

HGS's explanation as for why the two latter policy provisions preclude coverage and any legal obligation of defense is, admittedly, somewhat vague and lacking in factual background to show why coverage is excluded in this particular case. Given the liberal pleading standard set forth in Rule 8(a), however, and HGS's more than sufficient explanation as to why the Contractors Special Conditions Endorsement applies, the *HGS SAC* as a whole certainly provides a "short and plain statement" of its claim that HGS owes no duty to defend and is thus entitled to declaratory judgment. Fed. R. Civ. P. 8(a)(2).

Furthermore, the cases RD&M relies upon in its *Motion* are distinguishable and thus inapplicable to the issue before the Court today because those cases deal with failure to specifically plead insurance exclusions as affirmative defenses in the answer or another responsive pleading.

(*See Mem.*, *HGS* suit, Doc. 21-1 at 2 n.5.) For instance, in *Dixie Sav. & Loan Ass'n v. Pitre*, the liability insurer argued that the trial court erred because it should have held that there was no coverage under the policy for the claims asserted against the insured. 99-154, p. 24 (La. App. 5 Cir. 7/27/99), 751 So. 2d 911, 924. Relying on Louisiana Code of Civil Procedure Article 1005, the Louisiana Fifth Circuit reasoned that it could not consider the merits of this assignment of error because the insurer had failed to raise any affirmative defenses relating to coverage under the policy. *Id.* at 925. Specifically, the problem was that the insurer's answer had merely asserted that the "policy is its own best evidence and the provisions, exlcusions, and limitations therein are pled herein as though copied in extenso" without pointing to specific policy language and explaining why those provisions applied. *Id.* at 924.

The dispute between HGS and RD&M differs for several reasons. First, this case deals with a motion for a more definite statement regarding allegedly ambiguous claims contained in the operative complaint (the *HGS SAC*), whereas *Dixie* deals with waiver of an affirmative defense due to failure to raise it in the answer. Additionally, the *HGS SAC* did not fail to mention what provisions of the policy excluded coverage entirely by pleading the HGS policies "in extenso," like the answer in *Dixie* did, but instead pointed to specific language from the HGS policies to support its claim.

To sum up, while the *HGS SAC* is by no means perfect, it is more than adequate to satisfy the liberal pleading standard set forth in Rule 8(a) and provide RD&M with sufficient notice of HGS's duty-to-defend claim. The Court finds that the *HGS SAC* is not "so vague or ambiguous that the [responding] party cannot reasonably prepare a response," especially considering that RD&M did, in fact, respond to HGS's claims in its *Motion* by specifically attacking HGS's reliance on the Contractors Special Conditions Endorsement. Fed. R. Civ. P. 12(e); (*see Mem.* Doc. 21-1

at 6-7 (where RD&M brings into question the meaning of "independent contractor" as used in the policies).) Therefore, with respect to HGS's claim that it owes no duty to defend, RD&M's request for a more definite statement is denied.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that on *RD&M Inc.'s Motion to Dismiss/Stay Indemnity Claims & Motion for More Definite Statement* (Doc. 21) filed by RD&M, Inc., is **GRANTED IN PART** and **DENIED IN PART**.  With respect to RD&M's request that HGS's indemnity claim be dismissed, the *Motion* is **GRANTED**, and HGS's request for declaratory relief with respect to its duty to indemnify is **DISMISSED WITHOUT PREJUDICE.** With respect to RD&M's request for a more definite statement, the *Motion* is **DENIED.** As to the duty-to-indemnify claim, the *Motion* requesting a more definite statement is **DENIED AS MOOT**; as to the duty-to-defend claim, it is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>September 8, 2021</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**